## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

-----------------------------------------------

| | | |
|---|---|---|
| DUSTIN GUSLEY | : | |
| 501 Vista Villa Drive | : | |
| Enola, PA 17025 | : | Civil Action No.: _____ |
| Plaintiff, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| CENTRAL PENN | : | |
| CONSTRUCTION, INC. | : | |
| 385 Fairway Drive | : | |
| Etters, PA 17319 | : | |
| | : | |
| and | : | |
| | : | |
| AMBASSADOR HOME | : | |
| IMPROVEMENTS, INC. d/b/a | : | |
| RENEWAL BY ANDERSEN OF | : | |
| CENTRAL PA | : | |
| 4856 Carlisle Pike | : | |
| Mechanicsburg, PA 17050 | : | |
| | : | |
| Defendants. | : | |

-----------------------------------------------

## <u>COMPLAINT – CIVIL ACTION</u>

Plaintiff, Dustin Gusley ("Plaintiff"), by and through his undersigned counsel, for his Complaint against Central Penn Construction, Inc. ("Defendant Central Penn") and Ambassador Home Improvements, d/b/a Renewal by Andersen of Central PA ("Defendant Renewal") (collectively, "Defendants"), alleges as follows:

1

## INTRODUCTION

1.     Plaintiff brings this Complaint contending that Defendants violated Section 1 of The Sherman Antitrust Act of 1890 ("Sherman Act"), 15 U.S.C. § 1, by conspiring to restrain employee movement through "no poach" agreements that were not reasonably necessary to any legitimate business transaction or lawful collaboration among the Defendants.

2.     Plaintiff further alleges that Defendant Central Penn misclassified Plaintiff as an exempt employee and failed to pay Plaintiff the mandated overtime wages for all hours worked over forty (40) hours per week in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., and the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.100, *et seq*.

3.     As a result, Plaintiff has suffered damages as set forth herein.

## PARTIES

4.     Plaintiff, Dustin Gusley, is a citizen of the Unites States and Pennsylvania, where he currently maintains a residence at 501 Vista Villa Drive, Enola, PA 17025.

5.     Defendant Central Penn Construction, Inc. is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 385 Fairway Drive, Etters, PA 17319.

2

6.      Defendant Ambassador Home Improvements, Inc., d/b/a Renewal by Andersen of Central PA is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business located at 4856 Carlisle Pike, Mechanicsburg, PA 17050.

7.      Defendants are corporations existing under and authorized by the laws of the Commonwealth of Pennsylvania and are therefore covered "persons" under the Sherman Act.

8.      Defendant Central Penn is a "private employer" who engages in interstate commerce and/or has an annual volume of sales in excess of $500,000 and is therefore covered by the FLSA and the PMWA.

9.      Plaintiff was an employee of Defendant Central Penn during all relevant times hereto and, as such, is an employee entitled to the protections of the FLSA and the PMWA.

## JURISDICTION AND VENUE

10.     Paragraphs 1 through 9 are hereby incorporated by reference as though the same were fully set forth at length herein.

11.     This Court has subject matter jurisdiction over the FLSA claims pursuant to 29 U.S.C. § 216(b), which provides, in relevant part, that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."  See 29 U.S.C. § 216(b).

3

12.     This Court also has federal question jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331.

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims because those claims arise out of the same nucleus of operative fact as his federal law claims.

14.     This Court has subject matter jurisdiction over the antitrust allegations pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, and 28 U.S.C. §§ 1331, 1337.

15.     Venue is proper in this judicial district pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c), and (d) because a substantial part of the events giving rise to Plaintiff's claims occurred in this district and a substantial portion of the affected interstate trade and commerce was carried out in this district.

16.     Defendants are subject to the jurisdiction of this Court because, *inter alia*, each Defendant (a) transacted business in this District; (b) participated in an illegal conspiracy in this District; (c) has substantial contacts within this District; and (d) was engaged in an illegal conspiracy that was directed at and had the intended effect of causing injury to persons doing business in this District.

## FACTS SUPPORTING WAGE CLAIMS

17.     Paragraphs 1 through 16 are hereby incorporated by reference as though the same were fully set forth at length herein.

18.     Plaintiff began his employment as a Window Installer with Defendant Central Penn in or around August 2020.

19.     Plaintiff's job duties included installing windows (including those made by Defendant Renewal), leveling doors and windows, installing trim and capping, and unloading and reloading trailers.

20.     Plaintiff was classified as an exempt employee.

21.     However, Defendant paid Plaintiff a per diem rate of $230 per day for each day worked, regardless of the number of hours worked.

22.     Plaintiff routinely worked approximately 50-60 hours per week and was paid $230 per day worked, regardless of the hours worked each work week.

23.     Defendant Central Penn did not track Plaintiff's hours.

24.     Plaintiff was also given the opportunity to earn commission on certain, pre-determined projects, of which Plaintiff was aware.

25.     As such, the commission was non-discretionary.

26.     Plaintiff was misclassified as an exempt employee.

27.     Plaintiff did not meet any of the exemptions in order to classify him as an exempt employee.

28.     Plaintiff did not have the authority to formulate, implement, or otherwise deviate from Defendant's pre-established policies or operating practices, but instead performed his job duties subject to specific instructions and/or guidelines provided by Defendant.

29.     As such, Plaintiff's primary job duties did not include the performance of work requiring advance knowledge and the consistent exercise of discretion and judgment.

30.     Moreover, Plaintiff did not have the authority to commit Defendant in matters having significant financial impact, nor did he have the authority to negotiate or otherwise bind Defendant with respect to matters of significance.

31.     Accordingly, Plaintiff did not qualify for the exemptions from overtime for professional or administrative employees under the FLSA/PMWA while he was employed in the position of Window Installer.

32.     Moreover, in the role of Window Installer, Plaintiff's job did not involve any managerial responsibilities, nor did Plaintiff have any employees reporting to him or to whom he regularly gave direction.

33.     Furthermore, Plaintiff did not have the authority to hire or fire other employees, nor did he make any suggestions or recommendations regarding hiring or employee status changes to which Defendant lent significant weight.

34.     Accordingly, Plaintiff did not qualify for the exemption for executive employees under the FLSA/PMWA while he was employed in the role of Window Installer.

35.     Plaintiff's primary duty did not include making sales, or obtaining orders for contracts for services or for the use of facilities for which a consideration would be paid by Defendant's customers.

36.     Accordingly, Plaintiff did not qualify for the exemption for outside sales employees under the FLSA/PMWA while he was employed in the role of Window Installer.

37.     Finally, there are no other exemptions under the FLSA and/or PMWA which could arguably be applicable to Plaintiff in his role as a Window Installer.

38.     As such, Plaintiff should have been classified as a non-exempt employee and paid overtime wages at a rate of one-and-a-half times his regular rate of pay for all hours worked above forty (40) in a work week.

39.     In order to calculate his proper overtime rate of pay, his non-discretionary commission payments should have been included, but they were not considered by Defendant.

40.     In or about April 2023, Plaintiff decided to leave Defendant Central Penn and submitted his resignation, deciding to pursue his own business venture.

## FACTS SUPPORTING SHERMAN ACT CLAIMS

41.     By way of background, Defendant Central Penn is owned by Richard Kinney ("Mr. Kinney") and Michael Zengerle ("Mr. Zengerle").

42.     Defendant Central Penn and Defendant Renewal provide window and door installation services for the same set of potential customers within central Pennsylvania.

43.     Despite the Defendants' targeting of the same customer base in central Pennsylvania, Defendant do not attempt to compete and/or limit the manner in which they will compete for the business of the customers allocated to each of them in their agreement not to compete.

44.     On or about May 2023, Plaintiff decided to apply to Defendant Renewal for a Window and Door Installer position.

45.     On or about June 27, 2023, Plaintiff reached out via text message to Frank Hoy ("Mr. Hoy"), Defendant Renewal's Installation Manager, to ask for an update on his application to work for Defendant Renewal.  See Text Messages between Mr. Hoy and Plaintiff, dated June 27, 2023 through October 27, 2023, attached as Exhibit A.

46.     Later that day, Mr. Hoy responded to Plaintiff that Defendant Renewal was in a good spot with installers and that Mr. Hoy would certainly reach out to Plaintiff if Defendant Renewal was in need to hire more installers.   Id.

47.     Despite what Mr. Hoy said to Plaintiff about Defendant Renewal's lack of need for installers, Plaintiff found current job openings posted online for a Window and Door Installer position with Defendant.

48.     On or about June 28, 2023, Plaintiff texted Mr. Hoy and said that Defendant Renewal said they were looking for installers and that Plaintiff had found a job posting online.  Id.

49.     In his text message to Mr. Hoy, Plaintiff asked Mr. Hoy if Mr. Kinney and Mr. Zengerle were not okay with Defendant Renewal hiring Plaintiff as a Window and Door Installer.  Id.

50.     Mr. Hoy did not respond to Plaintiff's question about the involvement of Mr. Kinney and Mr. Zengerle in deciding whether Defendant Renewal would hire Plaintiff as a Window and Door Installer.  Id.

51.     On or about September 7, 2023, Plaintiff texted Mr. Hoy a picture of a bay removal and installation job that he had done by himself.  Id.

52.     Later that day, Mr. Hoy responded to Plaintiff and said that the job looked great.  Id.

53.     Mr. Hoy also apologized for coming off like he was ignoring Plaintiff and said that he had nothing against Plaintiff.  Id.

54.    Mr. Hoy stated in his text that he would love to have Plaintiff at Defendant Renewal, but that "unfortunately [Defendant Renewal] and [Defendant Central Penn] have an agreement that was established long before [Mr. Hoy]." Id.

55.    Mr. Hoy then texted that he was "not sure what, if any, issues are between [Plaintiff] and [Defendant] Central Penn . . . ." Id.

56.    Mr. Hoy concluded his text by stating that "if [Defendant Central Penn] [would] give [Plaintiff] clearance," then Defendant Renewal would hire him. Id.

57.    On or about September 25, 2023, Plaintiff texted Mr. Hoy and said that he was in a hard spot because, despite working for Defendant Central Penn for three (3) years, the only reason Plaintiff could not work for Defendant Renewal was because he had to work directly for Defendant Central Penn. Id.

58.    Plaintiff also stated in his text to Mr. Hoy that he felt this arrangement was a monopoly and that there could be a downside for Defendant Renewal for "loading a lot of [their] eggs into one basket with [Defendant Central Penn]." Id.

59.    Plaintiff also said in his text to Mr. Hoy that Defendant Central Penn was "only stopping [Plaintiff] [from working for Defendant Renewal] because [Defendant Central Penn] want[ed] [Plaintiff] to work for [Defendant Central Penn]." Id.

60.     Approximately one (1) hour later, Mr. Hoy responded to Plaintiff and said that his "work never went unnoticed" and that Mr. Hoy would "speak with [Defendant Renewal's] team and See what they say."  Id.

61.     On or about October 9, 2024, Plaintiff again reached out via text to Mr. Hoy and asked for an update.  Id.

62.     Mr. Hoy did not respond to Plaintiff's text message.  Id.

63.     On or about October 26, 2023, Plaintiff again texted Mr. Hoy and asked for an update.  Id.

64.     On or about October 27, 2023, Mr. Hoy responded to Plaintiff and texted that he hoped that Plaintiff understood that none of this was personal for Mr. Hoy or Defendant Renewal.  Id.

65.     Mr. Hoy also said in his text that "[Defendant Renewal's] hands are tied right now with the agreement [Defendant Renewal] [has] with [Defendant] Central Penn."  Id.

66.     A few hours later, Plaintiff responded to Mr. Hoy by text and said that he appreciated that Mr. Hoy was doing everything in his power to find a resolution.  Id.

67.     Plaintiff also said in his text to Mr. Hoy that Plaintiff felt as though what was being done was not fair to him.  Id.

68.     Plaintiff asked in his text to Mr. Hoy to set up a meeting to discuss the situation with Linda Johnston ("Ms. Johnston"), Defendant Renewal's General Manager, or Scott Brodkorb, Defendant Renewal's Chief Executive Officer (CEO). Id.

69.     Upon information and belief, there was an agreement made between Defendant Renewal and Defendant Central Penn to not hire or pursue each other's employees, both current and former.

70.     Approximately two (2) weeks after his October 27, 2023 text message exchange with Mr. Hoy, Plaintiff spoke with Ms. Johnston over the phone.

71.     During this phone call, Plaintiff explained that there was a hold up with Plaintiff being hired by Defendant Renewal.

72.     Plaintiff told Ms. Johnston that Mr. Hoy had told Plaintiff that there was an agreement between Defendant Renewal and Defendant Central Penn that Defendant Renewal could not hire any Installers from Defendant Central Penn.

73.     Ms. Johnston told Plaintiff words to the effect of "yes there's an agreement between us that we cannot poach or recruit Central Penn's employees."

74.     Upon information and belief, Mr. Kinney and Mr. Zengerle actively enforced this agreement.

75.     Plaintiff never agreed to this restriction, nor signed anything agreeing to the same, before, during, or after his employment with Defendant Central Penn.

76.   This "no-poach" or "no hire" agreement is an illegal antitrust arrangement and an unlawful restraint on employee movement.

**COUNT I**
**FAIR LABOR STANDARDS ACT**
**29 U.S.C. § 201, et seq.**
**FAILURE TO PAY OVERTIME**
**PLAINTIFF v. DEFENDANT CENTRAL PENN**

77.   Paragraphs 1 through 40 are hereby incorporated by reference as though the same were fully set forth at length herein.

78.   Pursuant to Section 207(a)(1) of the FLSA, all non-exempt employees must be compensated at a rate not less than one-and-one-half times their regular rate of pay for every hour worked over forty (40) in a work week.

79.   Defendant Central Penn did not pay Plaintiff on a "salary basis" as defined by the Department of Labor's regulations. Helix Energy Sols. Grp., Inc. v. Hewitt, 598 U.S. 39 (2023); 29 C.F.R. § 541.602(a).

80.   Defendant Central Penn misclassified Plaintiff as an exempt employee within the meaning of the FLSA.

81.   Defendant Central Penn failed to accurately track and maintain records of all hours worked by Plaintiff.

82.   As a result, Defendant Central Penn failed to pay Plaintiff overtime compensation for all hours worked over forty (40) in a work week at one-and-one-half times his regular rate of pay

83.     Defendant Central Penn also did not take into account Plaintiff's non-discretionary commission wages when failing to pay Plaintiff overtime compensation.

84.     The foregoing actions of Defendant Central Penn and the policies and practices of the same violate the FLSA.

85.     Defendant Central Penn's actions were willful, not in good faith, and in reckless disregard of clearly applicable FLSA provisions.

86.     Defendant Central Penn is liable to Plaintiff for actual damages, liquidated damages, and other equitable relief, pursuant to 29 U.S.C. § 216(b), as well as reasonable attorneys' fees, costs, and expenses.

**WHEREFORE**, Plaintiff prays for the following relief:

a.      Adjudicating and declaring that Defendant Central Penn's conduct as set forth herein and above is in violation of the FLSA;

b.      Adjudicating and declaring that Defendant Central Penn violated the FLSA by failing to pay the mandated overtime wages to Plaintiff for all hours worked over forty (40) in the work week;

c.      Awarding Plaintiff back pay wages in an amount consistent with the FLSA;

d.      Awarding Plaintiff liquidated damages in accordance with the FLSA;

e.     Awarding Plaintiff reasonable attorneys' fees and all costs of this action, to be paid by Defendant, in accordance with the FLSA;

f.     Awarding pre- and post-judgment interest and court costs as further allowed by law; and,

g.     An award for all additional general and equitable relief to which Plaintiff may be entitled as this Court may deem proper.

**COUNT II**
**PENNSYLVANIA MINIMUM WAGE ACT**
**43 P.S. § 333.100, et seq.**
**FAILURE TO PAY OVERTIME**
**PLAINTIFF v. DEFENDANT CENTRAL PENN**

87.     Paragraphs 1 through 40 are incorporated by reference as though the same were set forth at length herein.

88.     The PMWA provides that an employer must pay certain "minimum wages" to its employees.  See 43 P.S. § 333.104.

89.     The PMWA further provides that "employees shall be paid for overtime not less than one and one-half times the employee's regular rate" for hours worked in excess of forty (40) hours in a work week.  See 43 P.S. § 333.104(c).

90.     Plaintiff was based in Pennsylvania for purposes of coverage under the PMWA by virtue of, among other things, as described above, the fact that he regularly reported to and received directives from Defendant Central Penn's Etters, Pennsylvania location, was supervised and subject to decision making concerning

the terms and conditions of his employment by Defendant Central Penn's Pennsylvania-based management, and worked for Defendant in Pennsylvania.

91.     Defendant Central Penn misclassified Plaintiff as an exempt employee within the meaning of the PMWA.

92.     Defendant Central Penn failed to accurately track and maintain records of all hours worked by Plaintiff.

93.     As a result, Defendant Central Penn failed to pay Plaintiff overtime compensation for all hours worked over forty (40) in a work week at one-and-one-half times his regular rate of pay.

94.     By failing to pay Plaintiff overtime and one-and-one-half times his regular rate of pay for all hours worked over forty (40) in a work week, Defendant has violated the provisions of the PMWA mandating overtime pay to non-exempt employees.

95.     As a result of Defendant Central Penn's unlawful acts, Plaintiff has been deprived of compensation in an amount to be determined at trial, and is entitled to recovery of such amount, together with interest, costs, and attorneys' fees pursuant to the PMWA.

**WHEREFORE**, Plaintiff prays for the following relief:

A.    An award to Plaintiff for the amount of unpaid overtime wages to which he is entitled, including interest thereon, and penalties subject to proof, pursuant to the PMWA;

B.    An award to Plaintiff of reasonable attorneys' fees and all costs of this action, to be paid by Defendant Central Penn, in accordance with the PMWA;

C.    Awarding pre- and post-judgment interest and court costs as further allowed by law; and,

D.    An award to Plaintiff for all additional general and equitable relief to which Plaintiff may be entitled as this Court may deem proper.

**COUNT III**
**THE SHERMAN ACT**
**15 U.S.C. § 1**, et seq.
**UNLAWFUL NO-POACH AGREEMENT**
**PLAINTIFF v. ALL DEFENDANTS**

96.    Paragraphs 1 through 76 are incorporated by reference as though the same were set forth at length herein.

97.    The Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States . . . ." See 15 U.S.C. § 1.

98.     Defendants, by and through their officers, directors, employees, or other representatives, entered into and engaged in an unlawful agreement in restraint of trade and commerce in violation of Section 1 of the Sherman Act.

99.     Specifically, Defendants agreed to restrict competition for their customer base in central Pennsylvania through refraining from soliciting or hiring each other's employees, thereby fixing and suppressing Plaintiff's compensation.

100.    Defendants' agreement has included concerted action and undertakings among the Defendants with the purpose and effect of: (a) fixing Plaintiff's compensation at an artificially low level; and (b) eliminating, to a substantial degree, competition among Defendants for window and door installer employees.

101.    Defendants' combinations and conspiracy injured Plaintiff by suppressing his compensation and depriving Plaintiff of free and fair competition in the market of his services.

102.    Defendant's conduct and conspiracy are *per se* violations of Section 1 of the Sherman Act.

103.    In the alternative, Defendant's conduct and conspiracy violate establish violations of Section 1 of the Sherman Act under the rule of reason.

**WHEREFORE**, Plaintiff prays for the following relief:

A.      Injunctive relief, declaring the no-hire agreement among Defendants unlawful and enjoining Defendants from enforcing the agreement or entering into similar agreements going forward;

B.      An award to Plaintiff of threefold the damages determined to have been sustained by Plaintiff as a result of the conduct of Defendants.

C.      An award to Plaintiff of reasonable attorneys' fees and all costs of this action, to be paid by Defendants;

D.      Awarding pre- and post-judgment interest and court costs as further allowed by law; and,

E.      An award to Plaintiff for all additional general and equitable relief to which Plaintiff may be entitled as this Court may deem proper.

## **JURY DEMAND**

104.   Plaintiff hereby demands a trial by jury as to all issues so triable.

Respectfully submitted,


**MARZZACCO NIVEN & ASSOCIATES**


By:    */s/ Benjamin Salvina*
        Benjamin Salvina, Esq.
        945 East Park Drive, Suite 103
        Harrisburg, PA 17111
        TEL:  717-231-1640
        FAX:  717-231-1650
        bsalvina@klnivenlaw.com
        *Attorney for Plaintiff*

Dated:  July 23, 2024

## **DEMAND TO PRESERVE EVIDENCE**

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to Plaintiff's potential claims and his claims to damages, to any defenses to same, including but not limited to, electronic data storage, employment files, files, memos, job descriptions, text messages, emails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.